## PRICE
### v.
## ATLANTIC COAST LINE R. CO.
### No. 6747.

United States Court of Appeals,
Fourth Circuit.

Argued April 7, 1954.

Decided May 19, 1954.

B. Nathaniel Richter, Philadelphia, Pa. (James P. Mozingo, III, Darlington, S. C., and Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellant and cross-appellee.

A. L. Hardee and W. S. Houck, Florence, S. C. (Willcox, Hardee, Houck & Palmer, Florence, S. C., on the brief), for appellee and cross-appellant.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought under the Federal Employers' Liability Act to recover damages for the death of Clyde McLeod, a section master of the defendant who was in charge of a gang of five or six men that worked out of Mars Bluff, South Carolina on the Railroad's right of way. The gist of the complaint was that about 2 p. m. on March 30, 1951 the deceased was ordered by his superiors to put out a fire on the right of way near Mars Bluff without proper help and without proper equipment; and that he went to the scene of the fire with two section hands and assisted in extinguishing the fire; and that on the night of the same day he lapsed into unconsciousness and the next morning died from a cerebral hemorrhage caused by the defendant's negligence.

The case was submitted to Judge Wyche without a jury. He found, D.C., 115 F.Supp. 8, that the Railroad Company was guilty of negligence in certain particulars, but that the decedent's death did not result in whole or in part

from this negligence. He said that it would be mere conjecture and speculation on his part to hold that the exertion of the deceased at the fire caused or contributed to the cerebral hemorrhage from which the deceased died.

There is little or no dispute as to the facts of the case. McLeod was 52 years of age and had been employed by the Railroad Company since 1918. He had been suffering from high blood pressure and nephritis for two or three years prior to his death and had been regularly treated by Dr. E. M. Hicks, a well-trained and experienced physician. On occasion the patient was found to have a blood pressure as high as 230 systolic and diastolic 140, but under treatment the pressure was brought down to 160 to 170 systolic. The doctor had instructed the patient to guard against exercise or exertion, and to confine himself to a restricted diet to reduce his weight.

On the evening of March 31, at about 10:30 p. m., the doctor was called to the patient's house and found that he had suffered a cerebral hemorrhage and had a blood pressure of 185 over 115. He was taken to the hospital where he died at 7:15 the next morning. Dr. W. R. Mead, a physician similarly qualified, saw the patient at the hospital soon after his arrival at the request of Dr. Hicks and confirmed the latter's diagnosis.

About 1:30 p. m. on March 31 a small slowly burning fire on the right of way, about a mile and a half from Mars Bluff station, was discovered by a signal maintainer, and reported by him to McLeod. He thereupon drove to the scene in a motor car with two laborers of his gang. Arriving at the fire he left the laborers and drove back to the station and parked the car. He then walked back to the fire. During his absence the men cut pine tops and used them to quench the flames and by the time he returned, the fire was under control. Another man of his gang was available to assist in the operation but the deceased did not direct him to do so.

Under the Railroad's rules the deceased was not obliged to do manual labor himself unless it became necessary; and in this instance it was not necessary. Nevertheless on his return to the scene he took a pine brush and went along behind the two men for about ten minutes to brush and "stomp" out any little fire that might blaze up. One of the workmen testified that McLeod hardly did anything to help.

After the fire was put out the three men started to walk back to the station along the track but were picked up by the signal man in his car and driven the rest of the way. During the ride McLeod was in a mischievous mood and teased and bedeviled the driver in a jolly way. He seemed to be his usual self. When he arrived at the station he invited a fellow employee to go with him the next day to the funeral of a mutual friend. This employee noticed that his face was flushed and his clothing soiled with soot.

About 5:30 p. m. on the same day the deceased was seen at a neighborhood store and said that he had been fighting a fire and felt badly. About 7:30 p. m. he was again seen at the store and seemed dazed but shortly thereafter got into his car and drove home. Nothing further was shown as to his condition until about 10 p. m. when he became restless and went to bed. Shortly thereafter he complained of a severe headache, was violently sick and lapsed into a coma. Then the doctor was called and the events above described ensued.

Dr. Hicks, the family physician, and Dr. Mead, the diagnostician, who attended the deceased in his last illness, testified on behalf of the Railroad Company. Both physicians said that with a man in the physical condition of the deceased, the likelihood of a cerebral hemorrhage is increased by strenuous physical exertion or excessive emotional strain, but that fatality occurs almost as frequently when the patient is resting without preceding exertion or excitement. Dr. Hicks said that in his opinion the exertion of the deceased at the fire did not cause the cerebral hemorrhage. He agreed that such activity was a possible

but not a probable contributing cause; that usually physical exertion causes the blood pressure to rise but it lessens after the exertion ceases and without knowing the blood pressure during the interval of about seven hours in this case between the fire and the seizure it was not possible to find any causal connection between them.

Dr. Mead said that if a cerebral hemorrhage is caused by physical exertion or emotional strain, it is likely to occur at the time of the stress, and that when it does not occur until hours later it cannot be reasonably attributed to the stress without evidence of the continuous presence of symptoms in the interval.

Dr. Sol B. McLendon, a physician connected since 1930 with the South Carolina State Hospital, which is maintained primarily for the treatment of mental disorders, testified as an expert witness for the plaintiff. He had had much experience with patients suffering with high blood pressure and expressed the opinion, in answer to a hypothetical case, that in the case of a man with a history of hypertension of several years duration, any physical effort or emotional effort of the degree described could and would result in a cerebral vascular accident and subsequent death. The violence and extent of the exertion of the deceased at the fire was somewhat exaggerated in the question, and in answer the witness expressed the opinion that when a man with a history of hypertension engages in strenuous activity for 45 minutes and subsequently becomes unconscious and dies within ten hours, the physical exertion acts as a precipitating factor in causing the death. He further said that if after the exertion the man seems normal and not emotionally disturbed, and appears to be his usual self for some hours, then in such situation the effort in his opinion plays no part in the death.

Upon these facts the judge found for the defendant and we may not reverse the judgment unless the findings of fact were clearly erroneous. A finding is clearly erroneous, as the court said in United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." We have no such conviction, after a careful examination of the record in this case. On the contrary our opinion is that the findings of the District Judge were correct. Under these circumstances it is unnecessary to consider whether or not the Railroad was guilty of negligence under the facts of the case, and the judgment of the District Court will be

Affirmed.